order to show cause. I come to these conclusions by analogy to the provisions of the act and the forms and proceedings prescribed for proof of debts by corporations—section 22 and form 23. The motion to dismiss is in writing, and was filed on the return day of the order to show cause. Before the motion was heard, or any action whatever had upon it, and, in fact, on the same day, the respondent put in a denial of the act of bankruptcy alleged in the petition, and demanded a trial of that issue by a jury; and the usual order for such trial was then made and is now still pending.

The objections to the proceedings are not jurisdictional. They go to the sufficiency of the authentication of the petition only, and I have no hesitation in holding that the objections were waived by taking issue upon the petition and demand for trial. The court obtains jurisdiction of the proceedings by the filing of the petition for adjudication, and of the person of the respondent, in involuntary cases, by the issuing and service of the order to show cause. This is the usual mode by which jurisdiction of the person is obtained, and the only mode by which it can be enforced; but it is not the only means by which it may be conferred. A debtor against whom a petition for adjudication of bankruptcy is filed, may, no doubt, submit himself to the jurisdiction of the court without an order to show cause; and it is equally clear that he does so when he appears and confesses, or puts in a denial of the alleged acts of bankruptcy and demands a trial. By so doing he waives not only the necessity of an order to show cause, but the necessity of proof of the authority of the person signing the petition, and, in fact, of any verification whatever. Proof of the authority of a person signing a creditor's petition in a representative capacity, and a verification of the petition, like the accompanying proof of the petitioning creditor's debt, and deposition as to the alleged act or acts of bankruptcy, are requisite only to authorize the making of an order to show cause. When that is done their office is accomplished; and they never can be, and never are, of any further or other use in the case. It certainly does not need argument to show that the fact that an invalid order to show cause was made and served does not do away with or lessen the effect of the respondent's taking issue upon the petition, as a waiver.

On the argument an objection to the petition was raised, which does not appear, by the motion to dismiss, on file. It was this: That the only act of bankruptcy charged is a stoppage and fourteen days suspension of payment upon a single piece of commercial paper, whereas it is contended that nothing short of a general stoppage and suspension for fourteen days is within the meaning of the act. In the first place, the question cannot be raised in that manner. It must be done by way of exception or demurrer to the petition. But even if properly raised, the objection is not well taken. I am clearly of opinion that a single act of stopping payment, followed by a non-resumption for fourteen days, is prima facie an act of bankruptcy within the meaning of the bankrupt act. The prima facie effect of a single act, may, of course, be avoided more easily than in a case of general suspension, but it must be done by proper allegations by way of answer and proofs at the trial.

It results that the motion to dismiss must be denied, and the matter must stand for trial as heretofore ordered.

McNEAL (HOWES v.). See Case No. 6,789.

McNEAL (UNITED STATES v.). See Case No. 15,700.

McNEIL (BANTA v.). See Case No. 966.

## Case No. 8,913.

### McNEIL v. CANNON.

[1 Cranch, C. C. 127.] [1]

Circuit Court, District of Columbia. June Term, 1803.

JUDGMENT—CONFESSION—NO DECLARATION.

The court will permit a defendant to come in and confess judgment for the whole damages laid in the writ, although no declaration be filed.

Motion by the defendant to appear and confess judgment.

Mr. Simms, for plaintiff, contrâ. Here is no declaration; and if no declaration, then no action; and if no action, then no judgment can be given. 3 Bl. Comm. 290; Rev. Code, p. 85, §§ 33, 88.

Mr. Youngs, for defendant, cited Laws U. S. March 2, 1793, § 7 (1 Stat. 335), power of the court to make rules of practice. Confession of judgment waives all error, even the want of a declaration. Judgment may be confessed to the amount of the damages in the writ. The plaintiff cannot lay more damages in his declaration than in the writ. A confession of judgment on the writ is a confession of judgment for every thing which the plaintiff can possibly demand in this action. The act of assembly requires that the cause of action shall be indorsed on the writ. The declaration is for the benefit of the defendant, to give him notice of the nature of the demand. The defendant is not bound to require it. The act of congress (1 Stat. 266), requiring the creditor to pay for the food of his debtor, imprisoned at his suit, applies only to debtors confined on execution, and not on mesne process.

Mr. Simms, in reply. The plaintiff may recover more than the damages laid in the

[1] [Reported by Hon. William Cranch, Chief Judge.]

writ, if the defendant does not pray oyer of the writ, and plead the variance.

THE COURT permitted the defendant to be brought in and confess judgment for the amount of the damages laid in the writ.

MARSHALL, Circuit Judge, absent.

## Case No. 8,914.

### M'NEIL v. HILL.

[Woolw. 96.] [1]

Circuit Court, D. Minnesota. June Term, 1865.

SALES—WAREHOUSE RECEIPTS—INDORSEMENT— ESTOPPEL.

1. Warehouse receipts have, by custom, come to be considered in commercial transactions as representatives of the property mentioned in them.

2. The indorsement or assignment of such instruments are regarded as equivalent to the delivery of the article.

[Cited in Harris v. Bradley, Case No. 6,116; First Nat. Bank v. Bates, 1 Fed. 710; St. Paul Roller-Mill Co. v. Great Western Despatch Co., 27 Fed. 436.]

[Cited in Wichita Sav. Bank v. Atchison, T. & S. F. R. Co., 20 Kan. 523; Hale v. Milwaukee Dock Co., 29 Wis. 499.]

3. The warehouseman is estopped by his statement and promise in the receipt, to deny that he has the articles mentioned therein, in an action by an indorsee or assignee, who has purchased the paper in good faith.

[Cited in Rahilly v. Wilson, Case No. 11,531.]

[Cited in Babcock v. People's Sav. Bank, 118 Ind. 213, 20 N. E. 733.]

The defendants had given a warehouse receipt to Upham & Co. for 800 bushels of wheat. Upham & Co. agreed with the plaintiffs to sell to them a much larger amount of wheat, and, in part execution of this agreement, assigned to the plaintiffs the receipt of the defendants. The plaintiffs presented the receipt to the defendants, and demanded the wheat mentioned therein; and upon refusal to deliver it, they brought this suit to recover their damages. The cause came on to be tried to the court without a jury. The defendants offered to prove that they had never received the wheat from Upham & Co., and had no such wheat as mentioned in the receipt at the time it was given; but that they issued it to those parties, as a security for a loan of $400, or an advance made to them on a purchase of 800 bushels of wheat, to be delivered in future.

MILLER, Circuit Justice. As civilization has advanced, and commerce extended, new and artificial modes of doing business have superseded the exchanges by barter and otherwise. which prevail while society is in its early and simple stages. The invention of the bill of exchange is a familiar illustration of this fact. A more modern, but still not re-

cent invention, of like character, for the transfer, without the somewhat cumbersome, and often impossible, operation of actual delivery of articles of personal property, is the indorsement or assignment of bills of lading and warehouse receipts. Instruments of this kind are sui generis. From long use in trade, they have come to have, among commercial men, a well understood meaning. And the indorsement or assignment of them as absolutely transfers the general property of the goods and chattels therein named, as would a bill of sale. Austen v. Craven, 4 Taunt. 647; White v. Wilks [5 Taunt. 176] 12 East. 614; Conrad v. Atlantic Ins. Co., 1 Pet.[26 U. S.] 386; Gardiner v. Suydam, 7 N. Y. (3 Seld.) 357; Gibson v. Chillicothe Branch of State Bank of Ohio, 11 Ohio St. 311. When a warehouseman issues such a receipt, he puts it in the power of the holder to treat with the public on the faith of it. He enables him to say, and to induce others to believe, that he has certain property, which he can sell or pledge for a loan of money. If the warehouseman gives to the party who holds such a receipt a false credit, he will not be suffered to contradict the statement which he has made in the receipt, so as to injure a party who has been misled by it. That is within the most exact definition of estoppel. If A. gives to B. his note for $100. although he has received no value therefor, and may defend against the note in a suit brought by B., yet if B. sells the note to a third party who does not know of the facts, A. then must pay the note. Just so in the case of a warehouse receipt. If A. issues such a paper to B., for articles which he has never received, a third party treating with B. on the faith of the statement and promise contained in the receipt, will hold A. for the goods or their value. It is of no consequence what the transaction may be between the original parties; whether the receipt, as is claimed here, was intended as a security for a loan, or was entirely false.

The defendant here offers to prove that he never received the property mentioned in the receipt which he has given, but that the paper was issued as a security for a loan, or as an advance on wheat to be delivered. But he has stated in this receipt that he has the wheat in his warehouse, and also promised therein to deliver the wheat to the order of Upham & Co. These plaintiffs, believing this statement to be true, and relying on this promise, bought of Upham & Co. the receipt and property mentioned therein. They were justified in doing this, and the defendants must respond to their promise. The evidence is not admissible.

McNEIL (HURST v.). See Case No. 6,936.

McNEIL (McCORD v.). See Case No. 8,714.

---

[1] [Reported by James M. Woolworth, Esq., and here reprinted by permission.]